Case number 22-5133 et al. Radhia Buchanan et al, appellants versus William P. Barr in his individual capacity as former U.S. Attorney General et al. Mr. Michael Mann for the Black Lives Matter D.C. appellants. Mr. Crane for the Buchanan appellants. Mr. Springer for the appellees. Morning. Good morning. Scott Michael Mann, counsel for plaintiff's appellants in number 22-5139. I'll be addressing our argument that the Westfall Act resolves this case. The Crane counsel in number 22-5133 will then address the balance of our argument. And I reserve two minutes for rebuttal. May it please the court. Plaintiffs are civil rights demonstrators who are chanting, kneeling, and praying, otherwise nonviolently protesting in the heart of the nation's capital when they were violently dispersed by federal officers using tear gas, rubber bullets, and a baton charge. Although the constitutional violation here was grave, the question in this case is not one of constitutional law, but one that can be resolved using ordinary tools of statutory interpretation. Plaintiff's main argument proceeds in three steps, the first two of which are uncontested. As the court most recently held in Egbert, in the Bivens field, courts must implement the will of Congress. That's first. Second, in the Westfall Act of 1988, Congress enacted a specific provision that preserved Bivens, and the Supreme Court has concluded that four separate times, and the defendants don't disagree. Third, under ordinary tools of statutory interpretation, Congress's enactment of the Westfall Act savings clause for, quote, any civil action against an employee of the government brought for a violation of the Constitution of the United States, end quote, incorporates this court's well-known holding in Dellums, which is squarely on point and authorizes plaintiff's claims here. I'll go into each of these points in turn in more detail. Deferring to Congress is the core command of SCOTUS Bivens jurisprudence as defendants agree. In fact, absent the utmost deference to Congress, Egbert tells us, the courts pro or con. In fact, in the current case cited in our briefs, at page 394, the court said, quote, it is just as much judicial legislation for a court to withdraw a remedy which Congress expected to be continued as to improvise one that Congress never had in mind. Second, then, what did the Westfall Act do? Congress affirmatively acted to preserve Bivens. The text is very clear. This is a savings clause. It preserves, arving out of the exclusive remedy provision, a civil action against an employee of the government which is brought for a violation of the Constitution. That's Bivens. The Supreme Court has recognized that four separate times, most recently in Justice Thomas's opinion for the unanimous court in Tanzine. Defendants don't dispute that either. Now, here's the point of dispute. What did the Westfall Act say? It saved Bivens, quote, where it found it. And under the Supreme Court's and this court's longstanding understanding of statutory interpretation principles, including prior construction, codification of a judicially defined concept includes the judicial interpretations of it, including unusually important precedents, and that must include doubt. What are we to do with short, as we explained in Ziegler, a plaintiff cannot justify Bivens extension based on parallel circumstances with Bivens, Passman, or Carlson unless he also satisfies the analytical framework prescribed by the last four decades of better case law. Judge Wilkins, I think it's really important to distinguish that inquiry from what we're doing here. In Egbert, as in the Supreme Court's cases since 1980, they were concerned about lower courts going on adventure into private defendants, cases about terrorism, excessive force at the border. And in that circumstance, the Supreme Court has cautioned and said, don't get too fast to get outside of Bivens, Carlson, and Davis, because the judiciary isn't in the business of creating causes of action. But here, what the court needs to do is fundamentally something different. It needs to decide under ordinary rules of statutory construction what Congress preserves. And Egbert also said crystal clear that the court's number one task is to defer to Congress. So while it wouldn't be appropriate, might not be appropriate for courts to go very far beyond Bivens, Carlson, or Davis on their own, it is appropriate to do whatever Congress wanted to have happen. And under the prior construction canon, because of Dellum's prominence, it was a well-known case. It was a widely cited case. It was a newsworthy case. It involved a member of Congress on the steps of the Capitol. Congress had to know about it. So when they preserved Bivens land via the West Hall, by affirmative statutory text, not just an inference from silence, they enacted text saying, Bivens still available. Well, what was Bivens at that time? It included Dellum. Now the government says, well, it didn't really include anything other than Bivens, Carlson, and Davis. Congress doesn't legislate that way. They don't legislate with only three examples in mind without saying so. The government has no examples in which a statute has ever been construed that way. There are no examples in the text, and the prior construction canon counsels otherwise. It counsels for us to look to the law as it was when Congress acted. And that law included Dellum. In fact, Mr. McMahon, can you tell me what you think a court should do in the following situation? Same facts as happened here, but you bring a common law battery claim against the defendants. And the defendants say, under the Westfall Act, any civil action for money damages is preempted unless it, you know, is under the Westfall. And then you say, oh, no, actually, this state tort action for battery was preserved when Congress said paragraph one does not extend to a civil action brought for a violation of the Constitution of the United States. Because this state tort battery suit was a battery that itself violated the Constitution of the United States. I think, Judge Walker, the right way to read B2A is when a claim is brought for a violation of the Constitution of the United States, that refers to the cause of action. That refers to the claim that's made. And I think the, you know, Osborne against Haley, they've said that Congress clearly intended to wipe away state tort claims under state tort law. But just as clear, they intended to preserve in B2A. I would have thought you would have a different reaction, which is you could still say you should win in this case for the claims you brought. But I thought you would be happy about the possibility that there was a violation of the Constitution. Well, the fundamental command of Egbert is we have to do what Congress wanted. Congress wanted to wipe away state tort claims. It did it. Well, that's kind of, I don't know if pegging the question is the right phrase or not. But I'm saying maybe Congress didn't mean to wipe away all state tort claims. Maybe they only meant to wipe away state tort claims that are not brought for a violation of the Constitution. Well, they did permit Federal Tort Claims Act claims to incorporate state tort law. But I guess what I'm saying, Judge Walker, is we are trying to embrace the most careful, limited construction of what Congress did consistent with the text in the prior construction plan. I mean, we would have no, you know, if the court wanted to construe this claim as a D.C. law battery claim in the interest of justice and allow us to proceed, of course, we would have no objection. But I think if you're asking whether we've opened the floodgates, so to speak, to a series of other- That's not my question. I meant maybe you lose today, but maybe you win tomorrow when you bring a state battery claim. You would like that better than lose today and lose tomorrow. I would like that better than lose today and lose tomorrow. But I think we win today. I know. I know. I appreciate the question. I think fundamentally the government's interpretation of the statute is implausible. In fact, the committee report says that it expressly preserved the Bivens Act in action in the Westfall Act, and that was, quote, a major feature of the Westfall Act, according to the committee, and that's at our opening brief at 2025. The Justice Thomas's opinion for the unanimous court in Tanzania is also really relevant. You can't send interpretive rules back in time. I think that goes to Judge Wilkins' question about the new contexting. New context may be the measure of how the Supreme Court judges lower court's to push beyond the boundaries of what has been previously recognized. It's not how we do statutory interpretation. Statutory interpretation requires deference and respect to the legislative branch, including what they wrote and what they knew at the time. And Tanzania says you can't disrespect them or contravene their will by sending these presumptions back in time and expecting them to predict the future course of the court's jurisdiction. The district court fundamentally lost sight of the key inquiry by ignoring what Congress said. In fact, the district court did not cite the Westfall Act at all. Therefore, in accordance with what Congress wanted, in accordance with the Westfall Act savings clause, in accordance with the prior construction candidate as it was and the other cases cited in our brief, this court should hold that the plaintiffs have a preserved Bivens cause of action that was preserved by Congress in the Westfall Act through the existing precedent in Dellums, which is squarely on all fours with this case. Even defendants don't show. Thank you. Good morning, Your Honors, and may it please the court, Lee Crane, Gibson, Dunn and Crutcher for the Buchanan appellants. Your Honors, if the court concludes that the Westfall Act did not preserve Bivens, as my colleague has argued, it should still reverse under binding Supreme Court and this court's precedent for the reason that there are no special factors counseling hesitation in recognizing a cause of action in this case. I'd like to address three special factors, if I may, at this time. The first is the national security claim. The second, the administrative remedy, the hotline the government cites in its brief, and third, injunctive relief. With respect to national security, this is not a national security case, as the Supreme Court has defined that term. It is not a case at the border like Egbert, an international incident like Hernandez. It's not a case about the military like this court's decision in Doe versus Rumsfeld. Instead, this is what Abbasi called at page 1862 of the opinion, a domestic case where the invocation of national security cannot be a talisman to avoid inconvenient cases. Those are the court's words in Abbasi. But what the district court did here was establish a categorical rule that any and all claims arising out of Lafayette Park, no matter the violation, no matter the facts, implicate national security and thus are barred. For two critical reasons, that's incorrect. The first is it conflicts with 50 years of this court's precedent, starting at least with Quaker Action 1 in 1969. In Quaker Action 1, this court said clearly that mere invocation of the president's safety cannot be allowed to trump any First Amendment issue. The court said consistent with Abbasi's language on the talismanic invocation of national security, the court said on page 1118 of Quaker Action 1 that the court must be sure that conclusions with respect to national security rest upon solid facts and a realistic appraisal of the danger rather than vague fears extrapolated beyond any foreseeable threat. This court, in fact, in Quaker Action 1 expressly concluded, rejected the government's argument that the courts have no business addressing security as compared to First Amendment rights in Lafayette Square. And the reason why, for 50 years, this court has said Lafayette Park is a unique situs public expression, a unique public forum, as contrasted with footnote 40 of Quaker Action 4, where the court said very clearly the White House is among the most secure places possible for the president. Now, the district court's categorical ruling also conflicts with the facts of this case, as the court appeared to recognize. At JA-222, the court said it couldn't credit that the government's argument that the square was cleared in this case for reasons of a presidential movement, for good reason, because the complaint drawing inferences in the allegation of the light most favorable to the plaintiffs alleges the opposite. For instance, at JA-161, paragraph 95, we cite a statement by Defendant Barr that the correlation of the movement, as opposed to clearing the park, was not about a presidential movement. We also cite in our brief at footnote 5 the inspector general's report of the Department of Interior that concluded that there was no evidence that the square was cleared for purposes of a presidential movement. Let's suppose, I think that that is a fair reading of the complaint, and that is a way to look at it. What do we do with Egbert's language where the court said the question is not whether national security actually requires the defendant's conduct, but it's instead whether the judiciary should alter the framework established by the political branches for addressing that. So, your honor, I think that harkens back to one of the things the district court cited. I think language comes from Hernandez. And Hernandez says it's not just about whether the national security was part of, it was about whether the national security context was part of the decision making process to consider that this decision was entrusted to the political branches. And so, our response to that is that in this case, looking at the allegations and the facts, there's no indication whatsoever that national security was part of the decision making process. In this court, in Mischel, page 423, expressly looked at the competing arguments of the facts, the allegations, drew the inferences in the favor of the plaintiffs. In that case, it was an interrogation, and the government was arguing it was a national security issue, it was a national security interrogation. The plaintiff was arguing it was a criminal procedure, a generic law enforcement type instance. The court ultimately concluded there were special factors involved because the interrogation was abroad. But the court looked at the allegations because it's looking at the facts and considering whether consistent with that Hernandez language and with the Egbert language, whether the national security decisions were part of the decision making process. And so, if you look again at this court's jurisprudence for 50 years, Your Honor, the, this court is well-equipped. It has considered Lafayette Park a unique situs for public expression. The district court's categorical ruling that no claims can arise is not at all consistent with that jurisprudence. And also turning to the question of the political branch, Your Honor, if I could turn to the administrative grievances. The question, as Your Honor said, was whether there's a reason to think that Congress meant to entrust this decision to the political branch. And what the government has identified as quote-unquote evidence of that is a hotline. They cited, I believe, page 20 of their brief that goes to the Department of Interior to raise a grievance. That is fundamentally different from the government's invocation of Egbert, from the administrative grievance in Egbert. And if you look at the administrative grievance closely in Egbert, it's pursuant to a regulation, section 8 CFR 28710, which is about the claims that the plaintiff brought in that case for violations of excessive force. If you look at the procedures set out in that investigation, in that regulation, it says that there shall be an investigation. There has to be a report. Here, what the government's invoking is a hotline. The government can shelve it. There's no regulation whatsoever. There's no process. What Abbasi said is that the remedial process, the question of whether Congress has entrusted this to the political branch is about whether Congress has decided, whether the remedial process protects the injured party's interest. And this court's decision in Lyft is also probative of that question because in Lyft, the court looked carefully at the harms the plaintiff was alleging, the contractor case or the reputational harms. And it said the Tucker Act exists, Privacy Act exists. The only statute the government has cited in this case is 5A USC section 3, which is the generalized inspector general statute. So what the government is telling this court is that it is a special factor that an agency like likely every other agency in the government has set up a hotline and has an inspector general statute that has nothing, says nothing about law enforcement, does nothing about protesters' rights, does nothing about Lafayette Square. So at the end of the, this court needs to look at the harms alleged and the grievance process established, and it will see that there is no remedy to protect the injured party's interest. If I could cover, I know I'm over my time, Your Honor. If you could wrap up. Absolutely, Your Honor. Just the last point on the injunctive relief, Your Honor. The district court's holding that the injunctive relief in this claim that was dismissed for lack of standing was sufficient, directly conflicts with the court's language in Abbasi at page 1858 and 1862. I won't read it. I'll just leave it out there for purposes of time. And Your Honor, if the court concludes categorically that Lafayette Square and any standing-less injunctive claim can constitute a special factor, there will be no claims whatsoever because any plaintiff can file a meritless injunction claim. For the reasons, foregoing reasons of myself and my colleague, we ask that the court reverse. Thank you. Thank you. Mr. Springer. Good morning, Your Honors, and may it please the court, Brian Springer on behalf of the federal attorneys. I'd like to address a couple of points made by the other, my colleagues on the other side. First of all, with respect to the Westfall Act, I think it's important to note that the Westfall Act was a new statute that was passed to overrule the Supreme Court's decision in Westfall, which was about employee liability, particularly with respect to state law negligence claims. In that act, Congress decided not to legislate with respect to Bivens claims that continued the carve-out for constitutional claims that had been part of the Federal Tort Claims Act since the beginning. And Congress's decision not to legislate with respect to constitutional claims is not something that allows us to just sort of hook in all of these Bivens cases that the other side is talking about, including this court's decision in Dellums. Well, if the court said that what Congress did was leave Bivens where it found it, and Dellums is a case from our circuit, found by precedent from our circuit, then don't we apply Dellums? Your Honor, I think what the Supreme Court said, left Bivens where it found it, it meant left Bivens untouched. In other words, left Bivens as a judge-made remedy to continue to develop in the courts. In Hernandez, specifically in that footnote nine that Your Honor is referring to, the Supreme Court rejected a species of the definitively rejected it. And this court in Medial made similar observations about the idea that what Congress did in the Westfall Act did not affirmatively preserve Bivens. Instead, Congress chose not to legislate with respect to Bivens. There's no language in the Westfall Act that suggests that Congress was approving of the Bivens remedy, it was just continuing not to legislate with respect to that and leaving it to develop in the courts with continued further refinement of the Bivens doctrine. Wait a second, you just said that there's no evidence that Congress was endorsing or approving Bivens? I mean, what was Congress doing then with B2A? Your Honor, as I mentioned, the Federal Tort Claims Act, which came before the Westfall Act, had always been understood to carve out constitutional claims. And so in B2A, Congress was just reiterating this point that constitutional claims are not covered by the Westfall Act, they fall outside the Westfall Act. But Congress wasn't affirmatively ratifying any sort of judicial decisions. Instead, Congress was leaving this as a judge-made remedy that could continue to develop in the courts, and has continued to develop in the courts, you know, through Abbasi and Hernandez and Egbert. What do you see as the effect or importance of any of Dellums from this Court as applied in this case? Your Honor, I don't think that Dellums has any relevance in this case. I don't think that it can be used as a basis to not apply the Supreme Court's framework for determining whether or not a Bivens remedy lies in a particular case. The Supreme Court's recent Egbert decision is very clear about how this analysis is supposed to run, that you're supposed to look to the three Supreme Court decisions that have previously recognized a remedy and determine whether or not there's a new context, and then also determine whether or not special factors... Then you would say that looking at the decisions is only looking at the three Supreme Court decisions, not at any circuit law. Your Honor, this Court in Lumier was very clear that at the new context step, you don't look to any circuit law, you just look to the three Supreme Court decisions. Your Honor, is it... So in your view, since... I'm just trying to make sure I understand your argument. Since Dellums didn't do the kind of due context and special factors analysis, even if we concluded that this case were on all four with Dellums, we can't buy Dellums. We have to do that analysis vis-a-vis Bivens, Carlson, and Passman. Your Honor, I think that's correct. It's correct that the right way to proceed in this case is to apply the traditional tests that the Supreme Court has developed most recently in Egbert. And as we mentioned in our brief, and as Your Honor noted, the Dellums case itself didn't apply the special factors analysis. It just sort of said that this was an administrable thing that could go forward. And the Supreme Court in Egbert made clear that it's important to actually run the special factors analysis in determining whether to recognize a cause of action. And the reason for that is that the Court explained in Egbert and has reiterated many times is the separation of powers concerns with courts creating new causes of action out of full cloth. So how is it a special separation of powers concern if Congress was well aware of the Dellums case and didn't express any reservations about it or didn't when it had the opportunity to to say that, you know, you can't bring these sorts of constitutional actions and left them in place and left Bivens as it found it. I mean, isn't part of the Bivens case law that Congress would have been aware of, Dellum? Your Honor, Congress isn't required to cast doubt on appellate decisions that are out there. Instead, we look to what Congress actually did in terms of its legislation. Its legislation here didn't specifically preserve anything. And it is in sharp contrast to the cases that the plaintiffs are invoking. There's a whole bunch of legislative history where, you know, members of Congress and senators were saying that, you know, Bivens, you know, we're not touching Bivens. And the only way to interpret that is that they were fine with it. I mean, if I say I'm going to leave something in place, it's because I don't see it as a problem. Your Honor, I think the right way to read the legislative history is Congress recognized that this was a court-made remedy, a judge-made remedy, that courts had recognized and implied causes of action in certain circumstances, and that Congress was comfortable with that continuing to develop as a judge-made remedy and wasn't taking a view one way or the other in terms of trying to ratify this as a statutory remedy. Instead, to leave it to continue to develop in the courts as it has developed throughout the years, up through Egbert in particular. I guess I'm just having trouble understanding how, if Congress didn't express any concerns about the cause of action that was recognized in Dellums when it had an opportunity to do so, it would somehow be some sort of a violation of separation of powers for us to apply Dellum. Your Honor, I think the right way to think about this is that Supreme Court has explained how to run this analysis and how to run it to make sure that it doesn't involve any sort of separation of powers concerns. And the Supreme Court has said the right way to do this is to look at the three Supreme Court cases in particular in determining whether there's a new context, and then to do a special factors analysis, which again Dellums didn't do. And so therefore, Dellums can't form a basis to not apply the Supreme Court's current framework for determining whether or not a court may appropriately infer a cause of action. Your Honors, if there aren't other questions about the Westfall Act, I'd also just like to quickly address the national security concerns that are in this case. I think on the facts of this case, as it's been alleged by the plaintiffs, and as the district court emphasized, it's clear that there were national security implications here where there was a very large crowd of protesters directly outside the White House. There was a decision to disperse them right before the president made an appearance and walked across this park. And this court in the Quaker action cases that the plaintiffs are pointing to noted that the heightened presidential and White House security concerns that apply in that area, particularly when there's a large public gathering, is there could be bad actors who could infiltrate that group. And I think those concerns are... So let's suppose the allegations in the complaint were that the president and the attorney general, there were two groups of protesters, some that were in favor of the president and make America great again, and some that were Black Lives Matter. And in the complaint alleged that the president and attorney general directed the Black Lives Matter protesters to be moved out and allowed the make America great again protesters to stay. And then the lawsuit is brought and they say, well, special factors, national security, what do we do with that? Your Honor, we're not asking the court to issue a broad ruling and to address hypothetical facts that are... I'm asking you a hypothetical that I want you to answer. Your Honor, I can't get out in front of the solicitor general and making sort of representations about a hypothetical case. I would point the court to the Wood v. Moss case from the Supreme Court that was about moving one set of protesters... I'm not going to let you say that because the solicitor general isn't standing here. You're not going to answer the question. I mean, you need to help us understand the legal implications of ruling in your favor. I want you to answer my question. Your Honor, again, it's going to depend on the very particular facts of the specific situation, and you'd have to run the new context question and the special factors analysis, and it would depend on the specifics of what happens. Does that implicate national security for the president to say, move one group and whose message we don't like, but leave the other group there, leave them alone? Your Honor, I... Is that irrelevant? Is that an appropriate invocation of national security? Your Honor, I think that scenario, to the extent I understand the particular facts that are being raised, could be a different situation than the one we have here if the president weren't walking out into a park where there were a number of protesters and there was a concern about his safety and security. Here, we have that situation because these protesters were dispersed, and then the president walked through the park immediately after that dispersal happened. I guess another what I'm trying to drive at is, are you saying that we have to credit any invocation of national security? Your Honor, I think the lawsuit makes clear that there are times that national security is being invoked when it shouldn't be invoked, but here, there's a very clear and direct connection to national security, as this court has recognized in the Quaker action cases, because this was a large protest directly outside the White House, and the president then walked across the park after the protesters had been dispersed. And so here, the court doesn't need to answer sort of the potentially more difficult questions of when that might be too attenuated. Here, there's the very direct connection to national security, as this court properly recognized. What did you think of my state tort action possibility? Your Honor, it's common for plaintiffs to bring both a state law cause of action through the Tort Claims Act and also try to bring Diven's causes of action. That's a scenario that arises with frequency based on the same conduct. I don't know if that was quite the scenario I was imagining, but I think I'll let it go. Your Honors, unless there are further questions, we would ask that this court affirm the district court. Thank you. I'd like to start where my friend on the other side left off with the idea of the Supreme Court's framework. Apply the Supreme Court's framework, he says, over and over. Apply the framework. The framework exists, the Supreme Court said in Egbert, for one reason, to respect the separation of power. So applying the framework means fundamentally figuring out what Congress would have wanted. And here, the idea that there's, according to my friend, no language in the Westphal Act, as Judge Wilkins says, that's just not true. There is language. It says we preserve this type of action very specifically. And as Judge Wilkins, I think as you also said, it's very hard here to say that Congress didn't take a view. If you leave something in place and say affirmatively, we're leaving it, it is left. And so the idea that Congress didn't say anything, they could have chosen to remain silent. They didn't. They enacted a specific savings clause, and that was relevant. That's been relevant before, particularly... Your friend says, okay, fine, it's a savings clause, but it's a savings clause to the law as the Supreme Court interprets it. And so that's just what we do. We weren't overruling Bivens. They were leaving Bivens there. And so what we do is justify Bivens as proof. Two responses, Your Honor. First, if all my friend is saying is they were leaving it where it found it. Where it found it. Dellums was good law in 1988. If this incident happened in 1989, there's no question we would have a cause of action. The government doesn't disagree. The standard for overruling circuit precedent, a panel has to find that it is completely eviscerated at Saab versus SEC 873 F3, 297 at 311 from this court in 2017. So if he's just saying, do exactly what would have happened in 1988, it's Dellums, unless the Supreme Court has eviscerated it, which it has not. If anything, it's instruction to focus on the will of Congress strengthens the implication that Congress wanted Dellums. And I'll, I think another quote is particularly relevant here. In the Smith case cited in our brief, one of the four in which Supreme Court said that Westfall preserves Dellums. Quote, where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied in the absence of evidence of a contrary legislative intent. Here, Congress knew exactly how to make exceptions to when the government would be liable. They did it in the very next section, 2680, which lists about a dozen exceptions to Federal Tort Claims Act for discretionary functions and certain exceptional torts, extraterritorial incidents. There's nothing of the kind limiting the section we rely on, section B2A, preserving pivot. The suggestion that this court's decision in Lumiere, my friend's suggestion that Lumiere forecloses us again, mixes and matches the deference required to Congress under ordinary rules of statutory construction with the new context, which was developed later in which Justice Thomas made clear in Tanzine for the court, you can't send back in time. That's a rule designed to protect the separation of powers by limiting the power of the courts to create new things. We're not creating something new here. Delos created it and Congress says that is something that they want. Finally, with respect to the standalone special factors argument, the government does use national security as a talisman in violation of what Abbasi said, in violation of what this court did in the Quaker action case. The Quaker action cases, let's not forget, actually struck down restrictions on protests in Lafayette Square. I think Judge Wilkins' hypothetical about the viewpoint discrimination in the square of two opposing groups shows that in the government's view, in the district court's view, pivots is completely wiped out in Lafayette Square. That is not what Congress wanted. That is not what Congress thought it was doing in 1988. That would be a sweeping and striking rule at odds with the we ask that the court reverse the dismissal of the bid. Thank you. We have your argument.
judges: Wilkins, Walker, Sentelle